O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| INTERNET DIRECT RESPONSE, INC.,<br><br>          Plaintiff,<br><br>          v.<br><br>FRED BUCKLEY,<br><br>          Defendant. | Case No. SACV 09-01335 ABC (MLGx)<br><br>ORDER DENYING CORINNE BUCKLEY'S<br>MOTION FOR PROTECTIVE ORDER |

**I.   <u>Background</u>**

This action was filed in this court as an application for judgment debtor examinations of Defendant Fred Buckley and his wife, Corinne Buckley. Plaintiff Internet Direct Response ("IDR") seeks to enforce a May 12, 2009 judgment, filed in the Western District of North Carolina, against Fred Buckley in the amount of approximately $125,000 plus costs and pre-judgment interest.

On November 13, 2009, the Court ordered Fred and Corinne Buckley, to appear for judgment debtor and third party examinations, respectively. The examinations were originally set for January 13, 2010, but were continued to January 26, 2010, on the Court's own motion. On January 25, 2010, the Court granted Defendant's ex parte

application for a continuance of examinations until February 17, 2010.

On February 17, 2010, the third party examination of Corinne Buckley was commenced, but a dispute arose over the scope of her examination. Mrs. Buckley asserted that Plaintiff could not inquire into her personal assets because two postnuptial agreements between her and Fred Buckley dictate that she owns no property in common with her husband. The parties were instructed to brief the issue and the examinations of Defendant and Corinne Buckley were continued to March 29, 2010.

On March 3, 2010, Defendant and Mrs. Buckley each filed objections to Plaintiff's requests for production of documents, and on March 5, Mrs. Buckley filed a motion for a protective order: (1) prohibiting Plaintiff from requiring her to produce "personal records" or "personal financial records" related to "her separate property" at the examination and (2) prohibiting Plaintiff from questioning her about "her separate owned property" at the examination. (*See* Docket No. 24, Mot. for Protective Order at 2.).

On March 29, 2010, the parties appeared for the continued examinations of Fred and Corinne Buckley. The Court heard argument and rejected Defendant's objections to the examination and the production of documents. Defendant's examination began, but was not completed on that date, due to counsel's scheduling conflict. In addition, a dispute arose during the examination about whether or not Defendant had produced all documents responsive to Plaintiff's requests. The Court ordered Defendant to produce all responsive documents by April 16, 2010.

A decision on Mrs. Buckley's motion for a protective order was

postponed and all parties were given additional time for briefing. The Court ordered Mrs. Buckley to give her own lawyer all documents, other than tax returns, responsive to Plaintiff's requests for production, prior to the next hearing in order to ensure no further delay in proceedings.[1]

On April 27, 2010, the Court held a continued hearing on Corinne Buckley's motion for a protective order. Also before the Court was Plaintiff's motion for sanctions against Defendant for failure to produce documents as ordered by the Court. At the hearing, Fred Buckley testified about the failure to produce certain documents, testimony which is relevant to the issues in Corinne Buckley's motion for a protective order. For the reasons stated below, the motion for a protective order is denied.

## II.   Third-Party Discovery Under Federal Rule of Civil Procedure 69

Federal Rule of Civil Procedure 69(a)(2) governs discovery in judgment enforcement proceedings and provides that a judgment creditor "may obtain discovery from any person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located." This rule entitles a judgment creditor to "a very thorough examination of the judgment debtor." *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430-31 (8th Cir. 1998) (quoting *Caisson Corp. v. County West Bldg. Corp.*, 62

---

[1] On April 13, 2010, Plaintiff filed a motion for appointment of a receiver for Defendant and Mrs. Buckley's assets, a motion for issuance of writ of execution of judgment, and a motion to enforce judgment. On April 23, 2010, Plaintiff filed a motion for sanctions against Defendant and his attorney for costs associated with preparing and arguing the motions described above. Plaintiff's April 13 and 24 motions are addressed in a separate minute order dated April 27, 2010.

3

F.R.D. 331, 335 (E.D. Pa. 1974)). "The presumption should be in favor of full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise to enforce the judgment." *Id.* Although courts have cautioned that third party inquiry must "be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment," *Caisson*, 62 F.R.D. at 334 (citations omitted), inquiry into the assets of third persons is permissible where "the relationship between [the judgment debtor and third person(s)] is sufficient to raise a reasonable doubt about the bona fides of any transfer of assets between them." *Credit Lyonnais*, 160 F.3d at 431 (quoting *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977)); *see also Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009) (citing *Strick Corp. v. Thai Teak Prods. Co.*, 493 F.Supp. 1210, 1218 (D. Pa. 1980)); *Falicia v. Advanced Tenant Servs.*, Inc., 235 F.R.D. 5, 7-8 (D.D.C. 2006); *United States v. Neumann*, 1999 WL 156151 (D. Mass. Mar. 5, 1999); 12 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure § 3014 (2d ed.) (examining cases).

Circumstances that are sufficient to raise a reasonable doubt about the bona fides of asset transfers between a judgment debtor and a third party are found in both the corporate and spousal contexts. In the corporate context, the named judgment debtor is often a dissolved or bankrupt corporation and the third party contesting a deposition or other discovery is often a current or former officer or employee. *See, e.g., Credit Lyonnais*, 160 F.3d at 431 (reversing district court's denial of motion to compel deposition into former

4

CEO's personal assets where CEO resigned for unknown reasons at some point between the time the entry of judgment against the corporation and the corporation's failure to pay); *Caisson Corp.*, 62 F.R.D. at 335 (ordering third party, who was also the sole stockholder in the debtor corporation, to answer deposition questions within the "general scope" of Plaintiff's request to question him about the "interrelation of the assets" between the judgment debtor corporation and the third party's other corporations); *Falicia*, 235 F.R.D. at 7-8 (denying third party corporations' motions to quash bank record subpoenas where the same family owned the judgment debtor corporation and two subpoenaed third party corporations).

Courts have also allowed inquiry into a third party's assets in the spousal context. In *United States v. Neumann*, 1999 WL 156151 (D. Mass. Mar. 5, 1999), the judgment creditor subpoenaed financial records from the judgment debtor's husband, who was also the judgment debtor's employer. The judgment debtor and her husband operated a dental office in which they were the only two dentists. The district court granted the government's motion to compel production of the third party husband's personal financial records based on the "disproportionate amount of money the dental office makes in comparison to the [judgment debtor] wife's meager reported income, especially considering the Neumanns are the only two dentists at the practice." *Id.* at *1. The Court also noted that the third party husband had a personal financial interest in his wife's debt and a resulting interest in concealing his wife's true income. Similarly, in *Parkhurst v. Tabor*, 2009 WL 1872793 (W.D. Ark. June 30, 2009), a judgment creditor subpoenaed financial records, including tax returns, from the judgment debtor's spouse in order to determine "to

what extent, if any, [the judgment debtor and his spouse] co-mingled assets that [the spouse] claims are owned by her separately; and to determine if 'gifts' to [the spouse] from her parents' family business [were] actually disguised employment compensation to [the spouse] for services rendered to the family business." *Id.* at *3. The Court denied the spouse's motion to quash the subpoenas, finding that the tax returns of the spouse were discoverable under Fed. R. Civ. P. 69(a)(2). In sum, if there are factual circumstances that raise "even a 'slight showing that there has been a transfer of property' from the judgment debtor to the [spouse]," inquiry into personal assets of a non-party is within a court's discretion. See *Falicia*, 235 F.R.D. at 9 (quoting and distinguishing *Alpern v. Frishman*, 465 A.2d 828 (D.C. 1983), because in *Alpern*, there was no evidence of any transfers between the judgment debtor and his wife).

In this case, Corinne Buckley contends that this Court should enter a protective order (1) prohibiting questions about her "separate owned property" at her third party examination, and (2) prohibiting Plaintiff from requiring her to produce personal records. She claims that she and Defendant hold no community property pursuant to two postnuptial agreements entered into in 1996 and 1998, respectively. In support of her argument, Mrs. Buckley submitted a declaration attesting that she entered into the postnuptial agreements and has filed separate federal and state tax returns since their execution. In her supplemental memorandum in support of the protective order, Mrs. Buckley attached a declaration from a similar

2002 case[2] in which she sought to (1) demonstrate that the postnuptial agreements were valid and (2) establish that a vehicle was her separate property rather than community property. (*See* Docket No. 43.)

Mr. and Mrs. Buckleys's entry into two postnuptial agreements and filing of separate tax returns does not eliminate the Court's doubt regarding the validity of asset transfers between them. Indeed, the facts surrounding this enforcement action resemble the circumstances in which other courts have found doubt about asset transfers between spouses. As in *Neumann*, the judgment debtor in this case is employed by his third party spouse and is paid a very modest salary in comparison to the value of Mrs. Buckley's profitable company, Superbalife International. *See* 1999 WL 156151.

At the hearing, Mr. Buckley testified that Superbalife had a total of "four or five" employees the last time he was there. Mr. Buckley also testified that Mrs. Buckley pays him sporadically when he performs work in an amount she deems appropriate for the services performed. Mr. Buckley's pay stubs reflect intermittent and modest payments from Mrs. Buckley despite the fact that he is listed and pictured on at least two of the company's websites as the president of Superbalife. (*See* Pl.'s Opp. to Corinne Buckley's Mot. for Protective Order, Exs. 1-2.) In addition, Mr. Buckley testified that

---

[2] In the 2002 case, the Federal Trade Commission (FTC) brought an action in this district to enforce a $3,594,823 Southern District of Florida judgment against Fred Buckley and a dissolved corporation. *United States v. Frederick Oliver Buckley*, No. CV-02-5002-CBM (RCx) (C.D. Cal. filed June 24, 2002). In those judgment enforcement proceedings, Corinne Buckley moved for a strikingly similar protective order prohibiting the FTC from examining her or requiring her to produce documents about her "separate property." *See Id.* at Docket No. 41. The protective order was denied, but the parties settled before Mrs. Buckley's examination began. *Id.*

he owns no possessions other than his wedding ring and clothing, but that Mrs. Buckley pays for his food and shelter. Plaintiff is entitled to inquiry into Mrs. Buckley's assets in order to determine whether these asset transfers are legitimate gifts or instead are intended to disguise Mr. Buckley's true assets. *See Parkhurst*, 2009 WL 1872793, at *3.

Throughout her pleadings and at the hearings related to this motion, Mrs. Buckley repeatedly argues that her separate property is not "subject to garnishment for the debts of her husband." (*See, e.g.*, Mot. for Protective Order at 7). This argument misses the point for two reasons. First, at this stage of the proceedings, Plaintiff is simply trying to trace all assets of Mr. Buckley. The Court is not faced with deciding what assets may be attached to satisfy the judgment against Defendant.

Instead, at this stage, the Court must decide whether the facts are sufficient to raise a reasonable doubt about the bona fides of asset transfers between Mrs. Buckley and her husband so as to allow discovery of Mrs. Buckley's assets under Federal Rule of Civil Procedure 69(a)(2). The presumption under Rule 69 is "in favor of full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise to enforce the judgment." *Credit Lyonnais*, S.A., 160 F.3d at 430-31. The issue of whether Corinne Buckley's property may be used to satisfy the judgment is not currently before this Court.

Second, Mrs. Buckley's assertions that she and her husband hold no community property are conclusory. Whether the Buckleys hold community property is a legal determination for a court to decide once the parties have collected all of the relevant facts. The legal

8

effect of the 1996 and 1998 postnuptial agreements submitted to the Court is far from clear. Both of the postnuptial agreements, which purport to separate the couple's property interests were entered into at times when Mr. Buckley had incurred or was anticipating significant debt, raising questions about the motive for the transfer. In addition, while the 1996 agreement designates "an herbal company" as Mrs. Buckley's separate property, it does not specify the name of the company, and there are at least two companies allegedly owned by Mrs. Buckley that could be contemplated by the agreement: Smart Health and Superbalife International. Indeed, while Mrs. Buckley argues in this action that Superbalife is the company contemplated by the 1996 agreement, she argued that Smart Health was the company contemplated by the 1996 agreement in the 2002 FTC enforcement action. (*See* Supplemental Mem. in Supp. of Protective Order, Ex. C, ¶ 10.)

Even if the Court were to assume that the postnuptial agreements between Mrs. Buckley and Mr. Buckley effectively established Mrs. Buckley's separate property interest in "an herbal company" and the family residence when made, such an assumption would not conclusively establish that the spouses currently hold no community property under California law. For example, Mr. and Mrs. Buckley may have commingled funds in the years since the agreements, and Plaintiff is entitled to broad inquiry into Mrs. Buckley's assets and finances in order to discover the extent of Mr. Buckley's assets. Although Plaintiff's requests for production and the scheduled examination of Mrs. Buckley represent thorough attempts to enforce the North Carolina judgment against Mr. Buckley, the third party discovery devices used thus far are not being used as a means of third party harassment.

9

As the Court indicated on the record at the hearing, given the ambiguities in the property relationships and asset transfers between Mr. and Mrs. Buckley, and the Rule 69 presumption in favor of "full discovery of any matters arguably related to [the judgment creditor's] efforts to trace the [debtor's] assets," *Credit Lyonnais*, 160 F.3d at 430-431, Corinne Buckley's motion for a protective order is denied. The continued third party examination of Mrs. Buckley shall resume on June 1, 2010, at 10:00 a.m.

It is the Court's understanding that all responsive documents other than tax returns were turned over to Plaintiff at the conclusion of the April 27, 2010, hearing. The Court had not previously decided Mrs. Buckley's objection to production of tax returns based on California's qualified tax return privilege. *See generally*, *Webb v. Standard Oil Co.*, 49 Cal.2d 509 (1957). In this action to enforce the judgment of another federal court, however, federal common law regarding privileges apply. *See Heathman v. United States District Court*, 503 F.2d 1032 (9th Cir. 1974); *Del Campo v. Am. Corrective Counseling Servs. Inc.*, 2008 WL 4858502, at *2-3 (N.D. Cal. Nov. 10, 2008); Fed. R. Evid. 501. Moreover, even if the Court affords some deference to California's tax return privilege, the public policy in ensuring federal judgments are enforced overcomes Mrs. Buckley's assertion of privilege in this case. Mrs. Buckley's tax returns are not otherwise available to Plaintiff and are relevant to determining whether assets of Mr. Buckley have been concealed. Moreover, as the Court stated on the record, Mrs. Buckley's privacy is protected because all documents being produced are designated attorney's eyes only and may only be used for the purpose of determining the scope of Mr. Buckley's assets in this judgment

1   enforcement action. Accordingly, Mrs. Buckley's tax returns shall
2   be produced to Plaintiff by May 11, 2010.

3

4   **III. <u>Conclusion</u>**

5        Corinne Buckley's motion for a protective order is denied. The
6   examination of Mrs. Buckley will resume on June 1, 2010. All
7   responsive documents, including tax returns, must be produced to
8   Plaintiff by May 11, 2010. All documents produced are designated
9   attorney's eyes only and may only be used for the purpose of
10  determining the scope of Mr. Buckley's assets in order to enforce the
11  Western District of North Carolina judgment against Mr. Buckley.

12

13  DATED: April 29, 2010

14

15

16  _____
17  MARC L. GOLDMAN
    United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28