O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNET DIRECT RESPONSE, INC., ) | CASE NO.: SA CV 09-1335 ABC (MLG) |
| Plaintiff, ) | ORDER DENYING MOTION TO AMEND JUDGMENT (Docket No. 121), |
| v. ) | DENYING MOTION TO DETERMINE THE CHARACTER OF ASSETS OF CORINNE |
| FRED BUCKLEY, ) | BUCKLEY (Docket No. 119), AND DENYING MOTION FOR CONSTRUCTIVE |
| Defendant. ) | TRUST (Docket No. 127) |
| _____ ) | |

Pending before the Court are three motions filed by Plaintiff and Judgment Creditor Internet Direct Response, Inc. ("Plaintiff"): a Motion to Amend Judgment (Docket No. 121), a Motion to Determine the Character of Assets of Corinne Buckley (Docket No. 119), and a Motion for Constructive Trust (Docket No. 127). Plaintiff also filed a separate brief in support of its alter ego theory of liability. (Docket No. 122.) Defendant and Judgment Debtor Fred Buckley opposed only the Motion to Amend the Judgment on February 14, 2011. Non-party Corinne Buckley opposed the Motion to Amend Judgment and the Motion to Determine the Character of Assets of Corinne Buckley on February 14, 2011 and opposed the Motion for a Constructive Trust on February 21, 2011. Plaintiff filed untimely replies on March 4, 2011, but the Court has nevertheless considered them. Cf. Local Rules 7-10, 7-12.

The Court finds these matters appropriate for resolution without oral argument and VACATES the March 14, 2011 hearing date. Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons below, the Court DENIES all of Plaintiff's motions.[1]

**FACTUAL BACKGROUND**

In February 2009, an American Arbitration Association award was entered against Defendant Fred Buckley in North Carolina and on May 12, 2009, a judgment on the award was entered in federal district court in the Western District of North Carolina. The federal judgment was registered in this district in November 2009 and Plaintiff began collection efforts thereafter.

According to the arbitration decision, Plaintiff had entered into a contract with a company called Smart Health USA, its subsidiaries, assigns, and related companies to develop and maintain a website and manage internet advertising for a product called Herbal V. Apparently Fred Buckley was the signatory to the contract for Smart Health USA. For a reason not clear in the record, the parties agreed that Fred Buckley would be the individual defendant in the arbitration and any award would be imposed against Buckley individually for actions by

---

[1] It appears that Plaintiff failed to satisfy its meet-and-confer obligations imposed by Local Rule 7-3 with regard to non-party Corinne Buckley. Similarly, it does not appear that Plaintiff served many of the exhibits supporting its motion to amend the judgment until March 3, 2011, long after the motions were filed. (Docket Nos. 138, 139.) However, this is the third time Plaintiff has filed this set of motions (the first time the motions were stricken for violations of the Local Rules (Docket No. 68) and the second time they were withdrawn by Plaintiff (Docket Nos. 103—108)). Rather than once again postponing adjudication of these motions, in this instance the Court will reach the merits, but Plaintiff is admonished to comply with Local Rule 7-3 and timely serve all future filings or risk sanctions.

Smart Health USA and any subsidiaries.[2]

During the course of this contractual relationship, other products were apparently added to the scope of the contract, including Zyrexin, which was a product sold by Superbalife International, LLC ("Superbalife"). A dispute arose between the parties over whether Plaintiff was owed for the work done related to Zyrexin and Superbalife. The parties submitted the issue to arbitration.

The arbitrator ruled in Plaintiff's favor, concluding that the website and other work related to Zyrexin was compensable under the contract and the contract had been breached. The arbitrator relied on email correspondence that "clearly indicate[d] in writing that Buckley expected [Plaintiff] to develop and manage a website for Zyrexin and/or Superbalife," including an email in which Buckley said that "'one quick thing I want to change on the site is the Smart Health USA thing. I need to get Smart Health USA out and replace it with Superbalife International." (Mot. to Amend Judgment, Ex. A at 2.) The arbitrator also found "no emails from Buckley to [Plaintiff] stating that Zyrexin or Superbalife are separate entities apart from Smart Health USA or Buckley or that Zyrexin was not a product covered by the September 2005 contract." (Id.) The arbitrator awarded Plaintiff over $120,000 with interest.

After obtaining a federal judgment confirming the award and registering it in this District, Plaintiff immediately sought to conduct judgment debtor examinations on both Defendant Fred Buckley and his wife, Corinne Buckley. (Docket Nos. 1, 2.) Defendant Buckley and his wife resisted, and, after many additional proceedings,

---

[2] The federal judgment confirming the award likewise was entered against only Defendant Buckley individually.

including unsuccessful settlement discussions, Plaintiff now asks this Court to issue several different rulings that may enable it to collect the judgment against two parties not named as defendants in either the arbitration proceedings or the federal judgment: Corinne Buckley and Superbalife.

In brief, Plaintiff claims that Defendant Buckley is the President and Corinne Buckley is the owner of Superbalife. Plaintiff argues that, because the arbitration involved Zyrexin, a product of Superbalife, Corinne Buckley and Superbalife could have participated in the arbitration, but chose not to because Corinne and Fred Buckley falsely assumed that a post-nuptial agreement preserved Corinne Buckley's assets used to create Superbalife as separate property, which protects her and Superbalife from Plaintiff's collection efforts here. On this basis, Plaintiff asks the Court for leave to amend the federal judgment to add Corinne Buckley and Superbalife as defendants, to declare Corinne Buckley's separate asserts as community assets subject to collection for the judgment against Fred Buckley, and to impose a constructive trust on Fred Buckley's, Corinne Buckley's, and Superbalife's assets.

## DISCUSSION

### I. MOTION TO AMEND JUDGMENT

Federal Rule of Civil Procedure 69(a)(1) provides jurisdiction to the Court to enforce a judgment by utilizing California state law. One such law is California Code of Civil Procedure section 187, which allows a federal court to "'amend a judgment to add additional judgment debtors.'" Levander v. Prober (In re Levander), 180 F.3d 1114, 1121 (9th Cir. 1999). To amend a judgment under section 187, a plaintiff must show: "'(1) that the new party [is] the alter ego of

4

the old party <u>and</u> (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns.'" <u>Id.</u> (emphasis in original). The judgment creditor bears the burden to satisfy both requirements by a preponderance of evidence. <u>See</u> <u>Wollersheim v. Church of Scientology</u>, 69 Cal. App. 4th 1012, 1017–18 (1999).

### A. Alter Ego

Two general conditions must be satisfied to apply to find alter ego status: (1) whether there is a unity of interest and ownership such that the corporation and individual no longer exist separately; and (2) whether the corporate form must be disregarded to avoid inequity. <u>Greenspan v. LADT, LLC</u>, 191 Cal. App. 4th 486, ___, 2010 WL 5395685, at *13 (Dec. 30, 2010). These requirements are somewhat relaxed in the context of adding new defendants to a judgment pursuant to section 187; so long as the "'equitable principles regarding alter ego'" are satisfied, a court may add the new defendant to avoid "injustice." <u>Levander</u>, 180 F.3d at 1122. Nevertheless, "'the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require,'" <u>Greenspan</u>, 191 Cal. App. 4th at __, 2010 WL 5395687, at *13, and the "mere fact of sole ownership and control" will not suffice, <u>Katzir's Floor & Home Design, Inc. v. M–MLS.com</u>, 394 F.3d 1143, 1149 (9th Cir. 2004) (rejecting alter ego finding based on the "mere fact of sole ownership and control").

As a threshold matter, Plaintiff's premise that either Superbalife or Corinne Buckley could be an alter ego of Fred Buckley

is legally flawed. As a limited liability company,[3] Superbalife cannot be the alter ego of alleged President Fred Buckley because California law does not permit a plaintiff to impose an individual defendant's debt on a corporation on the theory that the corporation is the alter ego of the individual debtor. See Postal Instant Press, Inc. v. Kaswa Corp., 162 Cal. App. 4th 1510, 1522-23 (2008) (rejecting this theory of alter ego liability, called "outside reverse" piercing of the corporate veil); see also Schwarzkopf v. Briones (In re Schwarzkopf), 626 F.3d 1032, 1038 (9th Cir. 2010) (recognizing Postal Instant Press as controlling California law); Greenspan, 191 Cal. App. 4th at ___, 2010 WL 5395685, at *15. Likewise, Corinne Buckley cannot be considered the alter ego of Fred Buckley simply because the two are married and Corinne Buckley allegedly owns Superbalife. See Oyakawa v. Gillett, 8 Cal. App. 4th 628, 631 (1992) (rejecting attempt to add debtor's spouse to judgment pursuant to section 187 because the court was "not aware of any case authorizing the addition of a spouse qua spouse").

Even assuming Plaintiff's arguments were not legally foreclosed, Plaintiff's evidence comes nowhere close to showing by a preponderance that Fred Buckley was the alter ego of either Corinne Buckley or Superbalife. Plaintiff has submitted reams of pages of checks written by Corinne Buckley from Superbalife's bank accounts and two tax returns reporting income she earned from Superbalife. But that does not answer the question here, namely, whether <u>Fred</u> Buckley, as Defendant and Judgment Debtor, is the alter ego of either Corinne

---

[3] Plaintiff does not dispute that Superbalife, a limited liability company, is subject to the same rules for alter ego status as a corporation in this case. See Cal. Corp. Code § 17101(b).

6

Buckley or Superbalife. And on that point, Plaintiff offers only speculation: it alleges without evidence that Fred Buckley had "equal access" to Superbalife funds and was withdrawing cash from Superbalife accounts and using Superbalife funds for purchases while Corinne Buckley was overseas. While it is true that these withdrawals and purchases were made, there is nothing to suggest that Fred Buckley was making them. And even if he was, Plaintiff has offered no evidence that these withdrawals and purchases were for personal, rather than business, purposes. Even under the more relaxed alter ego standard that allows the Court to add new defendants to a judgment to avoid "injustice," the Court finds no factual basis to treat Corinne Buckley and Superbalife as alter egos of Fred Buckley here.

### B. Due Process

Even if new defendants could be considered alter egos of the existing defendants, a plaintiff must also show that the new defendants' due process rights would not be violated by adding them to the judgment. Katzir's Floor, 394 F.3d at 1149. To satisfy due process, the new defendants must have "'had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved.'" Id. at 1150 (quoting NEC Elecs., Inc. v. Hurt, 208 Cal. App. 3d 772, 779 (1989)).

Here, Plaintiff has failed to demonstrate that either Corinne Buckley or Superbalife actually controlled the arbitration in a way that provided them an opportunity to protect themselves during that proceeding. Plaintiff claims that Fred Buckley was the "decisionmaker" for Corinne Buckley and Superbalife and proceeded in the arbitration representing their interests, but it cites no evidence for this proposition. Plaintiff also cites no evidence to suggest

7

that either Corinne Buckley or Superbalife personally controlled Fred Buckley's participation in the arbitration in a way that would have defended their own interests. At most, Plaintiff points to the arbitrator's finding that "[t]here are no emails from Buckley to [Plaintiff] stating that Zyrexin or Superbalife are separate entities apart from Smart Health USA or Buckley or that Zyrexin was not a product covered by the September 2005 contract." But the absence of evidence cannot satisfy Plaintiff's burden here, especially when the lack of evidence is relied on for a different reason, namely, to demonstrate at the arbitration that the parties did not affirmatively exclude Zyrexin from their website development agreement. On this record, adding Corinne Buckley and Superbalife to the judgment would offend due process and Plaintiff's motion must be denied for this independent reason.

### C. Conclusion

Because neither requirement under section 187 is met, the Court DENIES Plaintiff's motion to amend the judgment to add Corinne Buckley and Superbalife as defendants and judgment debtors.[4]

---

[4] Although the Court has ruled for non-party Corinne Buckley, the Court feels compelled to point out that her other grounds for denial lack merit (and frankly border on frivolous). First, Section 11 of the Arbitration Act does not preclude this Court from deciding this motion because a party may seek to modify an arbitration award in any district where proper venue lies. See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193, 200-01 (2000). Second, the rules of the American Arbitration Association do not preclude the Court from amending the federal judgment, as opposed to the arbitration award itself, because a federal judgment on an arbitration award must be treated like any other judgment pursuant to section 187. See Greenspan, 191 Cal. App. 4th at __, 2010 WL 5395685, at *11 (reasoning that treating a judgment confirming an arbitration award differently than any other judgment under section 187 would improperly favor judgments on court decisions over judgments on arbitration decisions
(continued...)

## II. MOTION TO DETERMINE THE ASSETS OF CORINNE BUCKLEY

The Buckleys were married on March 22, 1988 and entered into the post-nuptial agreement in 1996. Superbalife was incorporated as a limited liability company nine years later on September 21, 2005. Plaintiff contends that the assets of Corinne, particularly the funds she used to start and maintain Superbalife, are community property and therefore reachable for the debt incurred by Fred.[5] The Court disagrees.

### A. The Post-Nuptial Agreement

The Buckleys entered the post-nuptial agreement on July 29, 1996 because "Corinne has an idea for an herbal company (the 'Company') that she would like to create a develop" and her "father is willing to make a gift to Corinne alone of funds needed to create and develop the Company, provided that Fred agrees that the Company and all results and proceeds therefrom will be for all purposes Corinne's separate property." (Sanders Decl., Ex. 1 at 20.) As a result, the Buckleys agreed that "the Company that Corinne causes to be established (whether such business is conducted through one or more separate entities or proprietorships) to exploit dietary supplements and/or any other herbal supplements or health products, and all income, results, and proceeds therefrom, shall for all purposes be and remain Corinne's separate property and Fred shall never acquire any interest for any

---

[4](...continued)
in violation of Federal Arbitration Act). Finally, Corinne Buckley cites no authority to compel the Court to treat the motion to amend the judgment as a summary judgment motion with the same procedural requirements.

[5]In this portion of the Court's opinion, the Court refers to Corinne and Fred Buckley by their first names to avoid confusion; no disrespect to either is intended.

reason whatsoever." (Id. at 21.) The parties further agreed that all income from any herbal company would remain Corinne's separate property; that any income from the company used to pay living expenses would be a gift to the community; that any property acquired by separate income from the company would remain Corinne's separate property; that a change in the form of this separate property would not change its character; and that the commingling of this separate property with community property would not change the character of the property as separate. (Id. at 21—23.)

During the time the post-nuptial agreement was signed, Fred was experiencing legal difficulties.[6] On March 5, 1996, he received an "asset freeze order" in FTC v. Innovative Telemedia, Inc. and Frederick O. Buckley, individually and as an officer and director of Innovative Telemedia, Inc., Case No. 96-cv-8140-WDF (S.D. Fla. filed on Mar. 4, 1996). On March 16, 2001, a criminal information was filed against him for violating the asset freeze order and for tax evasion; he pled guilty to the charges five days later. United States v. Buckley, No. 01-cr-6051 WJZ-1 (S.D. Fla. filed on March 16, 2001). In his plea colloquy, Fred stated that he was aware of the asset freeze order but he disobeyed it "by transferring money to my in-laws in France. I did this to save their business and their home which I knew was wrong but I still did it." (Mot. to Determine Character of Assets, Ex. A at 10.) He also "transferred money into other accounts

---

[6] Indeed, on February 23, 1998, the parties entered an unrelated First Amendment to their post-nuptial agreement, in which they agreed that Fred would transfer his community interest in their house to Corinne as her separate property, in exchange for Corinne paying "significant legal bills" incurred by Fred. (Sanders Decl., Ex. 1 at 45—52.)

1 to enable my wife and I to purchase a home in Los Angeles, which again
2 I knew was in violation of the court order by doing those transfers."
3 (Id.)  He also "wrote checks to myself for cash.  Some of these were
4 for business expenses, but much of the cash was for personal expenses
5 that should have been reported as income to me."  (Id. at 11.)  When
6 the judge asked Fred why he did these things, Fred said he was a
7 "young man at the time" and "wasn't thinking," and that his in-laws
8 were in "dire situations."  (Id.)

9     Thus, it appears that four months after Fred had transferred
10 money to his in-laws (presumably Corinne's parents) in violation of
11 the asset freeze order, he entered the post-nuptial agreement with
12 Corinne that the funds Corinne would obtain from her father to start a
13 herbal supplement business would remain her separate property.

### B. California Community Property Law

15     In California, there is a general presumption that property
16 acquired during marriage by either spouse is community property unless
17 traceable to a separate property source.  Rossin v. Rossin (In re
18 Marriage of Rossin), 172 Cal. App. 4th 725, 731 (2009) (citing Cal.
19 Fam. Code § 760).  Separate property is all property acquired before
20 marriage and all property acquired during marriage by gift, bequest,
21 devise, or descent.  Id. at 731—32 (citing Cal. Fam. Code § 771).
22 However, "'[b]oth before and during marriage, spouses may agree to
23 change the status of any or all of their property through a property
24 transmutation'" which is an "'interspousal transaction or agreement
25 that works a change in the character of the property.'"  Id. at 733—34
26 (Cal. Fam. Code § 850).  To do so, any agreement must be in writing
27 and must be accepted by the spouse adversely affected by the
28 agreement.  Id. at 734 (citing Cal. Fam. Code § 852).

**C. Corinne Buckley's Assets as Community Property**

Plaintiff advances four arguments as to why the Court should deem all of Corinne Buckley's income and assets from Superbalife as community property subject to Fred Buckley's debt in this case: (1) Superbalife is not covered by the post-nuptial agreement; (2) if it is, the money used to fund Superbalife was community property, not separate property from Corinne's father; (3) if funds are properly considered separate property by way of the post-nuptial agreement, the agreement itself is void as a fraudulent transfer; and (4) the commingling of community assets and Superbalife separate assets has transmuted the separate assets to community property. None of these arguments is persuasive.

        1. <u>Superbalife Is Covered by the Post-Nuptial Agreement.</u>

Plaintiff claims that Superbalife was not the "herbal company" contemplated in the post-nuptial agreement because in a 2003 declaration in another proceeding, Corinne stated that the company discussed in the post-nuptial agreement was "Smart Health," which was changed to Smart Health USA in 1997 or 1998 and Smart Health LLC in 2001. (Sanders Decl., Ex. 1 at 10–11, ¶¶ 10, 13, 14.) But the post-nuptial agreement was not limited to one company; it specifically contemplated that any company Corinne set up could be comprised of "one or more separate entities or proprietorships." And when Corinne filed her 2003 declaration, Superbalife had not yet been created, so her declaration at that time could not have contemplated its existence. Thus, there is nothing to suggest that Superbalife did not fall within the broad terms of the post-nuptial agreement.

## 2. There Is No Evidence that the Funds Used to Create Corinne's Company Derived from Community Property.

Plaintiff speculates that the funds Corinne was to receive from her father as noted in the post-nuptial agreement were actually Fred's funds he transferred to her father while he was subject to the asset freeze order in the FTC case. There is considerable facial appeal to this claim: it seems suspect that, only four months after Fred transferred funds to Corinne's parents because they were in apparent "dire" circumstances, her father would transfer money to her to use as separate property to start an herbal supplement company. But Corinne's father declared under penalty of perjury in another federal judgment debtor proceeding that this was, in fact, not true. He explained that he had experienced financial hardship after investing in and loaning money to Corinne's prior husband's business, which resulted in over $400,000 in debt to him. (Sanders Decl., Ex. 1 at 73—74, ¶ 4.) Quite rationally, he "insisted on the 1996 Post-Nuptial Agreement before [he] would give Corinne any money to start her own business." (Id.) He intended that any money he gave to Corinne would remain her separate property and, "[i]f Fred would not have agreed to sign the agreement I would not have given my daughter the money she needed to start the business." (Id. at 75, ¶ 8.) In fact, the post-nuptial agreement was his idea and he was, in his own words, the "driving force behind it." (Id. at 75—76, ¶ 10.)

Plaintiff offers nothing but speculation to rebut this evidence. Without actual evidence to support its theory, the Court cannot say that the money Corinne's father sent her to start her herbal supplement business was Fred's community property and should be treated as community property now.

### 3. The Statute of Repose Precludes a Finding that the Post-Nuptial Agreement Was a Fraudulent Transfer.

In a related argument, Plaintiff claims that the 1996 post-nuptial agreement effected a fraudulent transfer of assets designed to shield community property from Fred's creditors and must be set aside pursuant to California's Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code §§ 3439—3439.12. However, Plaintiff's claim is time-barred by the UFTA's statute of repose, which provides that, "[n]otwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred." Id. § 3439.09(c). This seven-year period is absolute, so it cannot be tolled or otherwise extended. See See In re JMC Telecom LLC, 416 B.R. 738, 742—44 (C.D. Cal. 2009); Roach v. Lee, 369 F. Supp. 2d 1194, 1197—1200 (C.D. Cal. 2005); see also In re Universal Trading & Inv. Co., No. C 06-80086 MJJ, 2008 WL 823539, at *3 (N.D. Cal. Mar. 27, 2008), aff'd Universal Trading & Inv. Co. v. Lazarenko, 352 F. App'x 210, 211 (9th Cir. 2009) (unpublished disposition); Rooz v. Kimmel (In re Kimmel), 367 B.R. 166, 169 (N.D. Cal. 2007) (applying seven-year statute of repose to reject request to set aside post-nuptial agreement as a fraudulent transfer), aff'd 378 B.R. 630, 639 (B.A.P. 9th Cir. 2007), aff'd 302 F. App'x 518 (9th Cir. 2008) (unpublished disposition).

The post-nuptial agreement's seven-year statute of repose expired in 2003, before both the original action was filed in North Carolina in 2008 and this action was filed here in 2009. Thus, the Court

cannot set aside the post-nuptial agreement as a fraudulent transfer.[7]

### 4. Commingling Did Not Transmute Corinne's Separate Property into Community Property.

Finally, Plaintiff claims that Corinne commingled her separate income and other assets related to Superbalife with community assets and that transmuted her separate property into community property subject to Fred's debt. However, Plaintiff has offered no evidence that community funds and separate funds have been commingled; indeed, Plaintiff identifies no community assets at all, other than those it alleges where improperly classified as Corinne's separate property derived from Superbalife. Contrary to Plaintiff's position, the post-nuptial agreement designated all funds derived from Corinne's herbal business as separate property, regardless of whether they are commingled with community funds. That is consistent with the general rule that commingling separate and community funds does not transform the separate funds if they are traceable to their source. See Rossin, 172 Cal. App. 4th at 734. Plaintiff has offered no evidence to compel the Court to recharacterize Corinne's separate property as community property that would be reachable to satisfy Fred's debt.

**D. Conclusion**

The Court declines to set aside the 1996 post-nuptial agreement and rejects Plaintiff's other arguments to recharacterize Corinne's

---

[7] Without authority or cogent reasoning, Plaintiff argues that "[e]very dollar earned by [Corinne] and Superbalife, in 2008, in 2009, in 2010 and 2011" represents a continuing fraudulent transfer. (Reply to Mot. to Determine Character of Assets 7.) But these transfers were wrongful only to the extent the funds involved could be characterized as community rather than separate property. Because all of Plaintiff's arguments fail in that regard, Plaintiff's attempt to extend the statute of repose is unpersuasive.

separate property in Superbalife as community property subject to collection for Fred's debt.  Plaintiff's motion is therefore DENIED.

### III. **MOTION FOR CONSTRUCTIVE TRUST**

Plaintiff moves to impose a constructive trust on "sales proceeds and profits derived from the website designed for Smart Health," which would operate against Fred Buckley, Corinne Buckley, Superbalife, and "any person or entity acting on their behalf or for their benefit." (Mot. for Constr. Trust 2.)

Generally, "[a] constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner." Communist Party of the U.S. v. 522 Valencia, Inc., 35 Cal. App. 4th 980, 990 (1995); see also Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 908—09 (9th Cir. 2010) (citing 522 Valencia).  "The principal circumstances where constructive trusts are imposed are set forth in Civil Code sections 2223 and 2224." 522 Valencia, 35 Cal. App. 4th at 990.  Section 2223 states, "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."  Similarly, section 2224 states, "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

A court may impose a constructive trust on three conditions: "(1) the existence of a _res_ (property or some interest in property); (2) the _right_ of a complaining party to that res; and (3) some _wrongful_ acquisition or detention of the res by another party who is not entitled to it." 522 Valencia, 35 Cal. App. 4th at 990 (emphasis in

original). A breach of contract can form the basis for a constructive trust. <u>GHK Assocs. v. Mayer Group, Inc.</u>, 224 Cal. App. 3d 856, 878 (1991). However, property cannot be subject to a constructive trust for the benefit of another unless there is "some basis for determining that [the party seeking the constructive trust] actually owned or was rightfully entitled to possession of" the property. <u>522 Valencia</u>, 35 Cal. App. 4th at 991 (refusing to impose constructive trust on companies' assets in the absence of evidence that the party seeking the trust actually possessed an ownership interest in those assets).

Plaintiff's request for a constructive trust fails for the fundamental reason that it has not shown that it is the rightful owner of either the Superbalife website or any profits derived from Fred Buckley's use of the website.[8] The underlying arbitration and judgment established only that Fred Buckley breached a contract with Plaintiff to develop the website and as a result, was liable for money damages. The arbitrator did not also conclude that Plaintiff had an ownership interest in the website and profits derived from it and that Fred Buckley was wrongfully withholding that property. Instead, Plaintiff has the same claim here as any other judgment creditor with a money judgment and the California Enforcement of Judgments Law provides a comprehensive means for Plaintiff to enforce that judgment. <u>See, e.g.</u>, Cal. Code Civ. P. § 699.510. Thus, the motion is DENIED.

---

[8] Plaintiff is correct that in some circumstances profits derived from wrongfully retained property can be subject to a constructive trust. <u>See</u> <u>Mattel</u>, 616 F.3d at 910. That does not mean that Plaintiff is excused from showing that it has an ownership interest in the property generating the profit. <u>See</u> <u>522 Valencia</u>, 35 Cal. App. 4th at 991.

**CONCLUSION**

Plaintiff's Motion to Amend Judgment is DENIED (Docket No. 121); Motion to Determine the Character of Assets of Corinne Buckley is DENIED (Docket No. 119); and Motion for Constructive Trust is DENIED (Docket No. 127).

**IT IS SO ORDERED.**

DATED:  3/7/2011   _____

**AUDREY B. COLLINS**
**CHIEF UNITED STATES DISTRICT JUDGE**